IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| TONYA B. HOUSTON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 11-3500-CV-DPR |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM AND ORDER

An Administrative Law Judge ("ALJ") denied Social Security Disability Insurance Benefits and Supplemental Security Income to Plaintiff Tonya Houston in a decision dated March 25, 2011 (Tr. 8-19). The Appeals Counsel denied review (Tr. 1-4). Thus, the ALJ's decision became the Commissioner of Social Security's final decision denying Social Security Disability benefits. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 416.1481. For the reasons set forth below, the decision of the Commissioner of Social Security is **REVERSED AND REMANDED** for re-evaluation consistent with this opinion.

### FACTUAL BACKGROUND

Claimant Houston sought disability benefits alleging back, neck, and foot pain, and mental illness (Tr. 149). Houston alleged the onset of her disability date from August 1, 2005 (Tr. 149). She claimed past work as an assembly-line worker, laborer, packer, silk screener, telemarketer, office manager, sales clerk, and secretary (Tr. 174).

*Mental Health and Psychological History*

Houston sought counseling from The Kitchen Medical Clinic in December 2008 for

depression and anxiety. She reported at least one past suicide attempt, approximately ten years prior. The medical record indicates that Houston scored 27, indicating severe depression, on the PHQ-9.[1] She was diagnosed with recurrent Major Depressive Disorder, without psychotic features (Tr. 314-15). In May 2009, Houston reported having "emotional fluctuations," significant anxiety, and "seeing demons." She was referred to the Murney Clinic for "more long term therapy" (Tr. 336).

On May 18, 2009, Houston was evaluated at the Murney Clinic at Forest Institute in Springfield, Missouri (Tr. 340-44). Houston reported she was taking Celexa. Houston was diagnosed with Major Depressive Disorder, Single Episode, Severe with Psychotic Features, and Mood Disorder. She was assigned a Global Assessment of Functioning (GAF) Score of 48.[2] A treatment plan was developed to address Houston's 1) recurrent suicidal ideation; feelings of hopelessness, worthlessness and inappropriate guilt, and not feeling any enjoyment in any activity; and 2) persistent anger (Tr. 346-47). Houston attended therapy sessions on June 1, 13, and 15, but did not appear for appointments on May 27, June 8 and 22 (Tr. 349-58).

On November 2, 2009, Diane M. Ellis, Psy.D., at the Murney Clinic performed a diagnostic assessment. She noted Houston's past therapy sessions at the Murney Clinic in May and June 2009. Houston complained of depression and anxiety, and reported seeing demons. She reported she was taking Celexa for depression. Dr. Ellis diagnosed Major Depressive

---

[1] The PHQ-9 is a self-administered screening for the severity of depression. PMC, http://www.ncbi.nlm.nih.gov/pmc/articles/PMC1495268 (last visited March 21, 2013).

[2] A GAF (Global Assessment of Functioning) of 41-50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). *Diagnostic and Statistical Manual*, Text Revision 34 (4th ed. 2000).

Disorder, Single Episode, Severe with Mood-Congruent Psychotic Features. She diagnosed a GAF of 50. Dr. Ellis recommended that psychological treatment was medically necessary (Tr. 452-58). On December 21, 2009, Dr. Ellis administered the following screening instruments: Beck Depression Inventory-II (BDI), Beck Anxiety Inventory (BAI), and Beck Hopelessness Scale (BHS). Her scores on the BDI and BAI both fell into the severe range. Houston scored 19 out of 20 on the BHS. A score higher than 9 is predictive of "eventual suicide in depressed suicide ideators followed for 5 to 10 years after discharge from a hospital." It is recommended that those who score highly on the BHS, should be "closely scrutinized for suicide potential" (Tr. 433).

Houston received therapy from Dr. Ellis on November 9 and 23, December 7, 16, and 21, 2009, and January 11, 21, 2010, but missed appointments on November 16, 2009, January 4 and 25, and February 1 and 8, 2010. Houston missed several appointments because she was unable to find transportation (Tr. 426-49, 515). On March 8, 2010, Dr. Ellis discharged Houston from treatment and on March 22, 2010, moved her file to inactive status (Tr. 513-14).

Houston returned to the Murney Clinic in November 2010, complaining of depression, anxiety, and frequent drinking. Dr. Ellis evaluated her and diagnosed Major Depressive Disorder, Single Episode, Severe with Mood-Congruent Psychotic Features and Alcohol Dependence with Psychological Dependence. Dr. Ellis determined a current GAF of 53 (Tr. 502-08).[3] Houston attended therapy sessions with Dr. Ellis on November 29, December 24, 2010, January 21, 2011, but missed appointments on December 1, 10, and 20, 2010, and January 3, 10, February 4, 2011, again due in part to difficulty finding rides. Dr. Ellis prepared a

---

[3] A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflict with peers or co-workers). *Diagnostic and Statistical Manual*, Text Revision 34 (4th ed. 2000).

discharge letter on February 28, 2011, due to missed appointments (Tr. 759-772).

Houston was hospitalized at Cox Medical Center after a suicide attempt on March 15, 2011. She was diagnosed with Alcohol Abuse and Alcohol Intoxication, Alcohol Dependence, and Substance-Induced Mood Disorder, with a GAF of 40.[4] She was discharged on March 18, 2011, with no suicidal ideation, no homicidal ideation, no withdrawal symptoms, and without psychotic behavior (Tr. 750-53). On March 18, 2011, a social worker at Cox Medical Center contacted Dr. Ellis regarding Houston's hospitalization. As a result, Dr. Ellis maintained Houston's file in active status, and set an appointment for her on March 21, 2011 (Tr. 759-772).

*Medications*

The medication list from the Kitchen Medical Clinic indicates Houston was prescribed Celexa between December 2008 through December 2009 (Tr. 368, 397).[5] Notes from March 2010 indicate she continued to take Celexa (Tr. 475). In July 2010, her dosage of Celexa was increased (Tr. 471). Records from Houston's March 2011 psychiatric hospitalization indicate she was still taking Celexa.

*Medical Opinions*

On July 24, 2009, Lester Bland, Psy.D., a non-examining, consulting psychologist prepared a Psychiatric Review Technique form (Tr. 374-85) and Mental Residual Functional Capacity Form (Tr. 386-88), based upon a review of Houston's psychological treatment records.

---

[4] A GAF of 31-40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school). *Diagnostic and Statistical Manual*, Text Revision 34 (4th ed. 2000).

[5] Celexa (Citalopram) is used to treat depression. MEDLINE PLUS, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a699001.html (last visited March 21, 2013).

Dr. Bland determined that Houston suffered from Depressive Syndrome (an Affective Disorder), characterized by appetite disturbance with change in weight, sleep disturbance, feelings of guilt or worthlessness, difficulty concentrating or thinking, and thoughts of suicide. Dr. Bland found that Houston suffered only mild limitations in the restriction of activities of daily living; moderate difficulties maintaining social functioning; moderate difficulties maintaining concentration, persistence, or pace; and no episodes of decompensation of extended duration (Tr. 382). Regarding Mental RFC, Dr. Bland found Houston moderately limited in her ability to understand and remember detailed instructions; to carry out detailed instructions, to maintain attention and concentration for extended periods; and to interact appropriately with the general public. Dr. Bland found Houston not significantly limited in any other category (Tr. 386-88).

Dr. Ellis, Houston's treating psychologist, prepared a Mental Medical Source Statement (MSS) on December 21, 2009 (Tr. 393-94). Dr. Ellis found Houston markedly limited in the ability to understand and remember detailed instructions, to carry out detailed instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, to sustain an ordinary routine without special supervision, to work in coordination with or proximity to others without being distracted by them, to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to accept instructions and respond appropriately to criticism from supervisors, and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Dr. Ellis found Houston not significantly limited in other categories.

On January 26, 2011, Frances J. Anderson, Psy.D., evaluated claimant at the ALJ's

5

request (Tr. 43). She diagnosed Alcohol abuse, reportedly in remission for "four weeks" with history of apparent binge drinking and Depressive Disorder NOS with anxious features, with reported intermittent symptoms. Dr. Anderson assigned a GAF of 65.[6] Dr. Anderson also prepared a Mental Medical Source Statement, finding Houston mildly impaired in her ability to carry out complex instructions, to make judgments on complex work-related decisions, and to interact appropriately with the public. Dr. Anderson found Houston not limited in any other work-related mental activities (Tr. 707-713).

*ALJ Hearing*

Houston appeared in person with counsel at a hearing before an Administrative Law Judge (ALJ) on January 6, 2011. Houston testified she had worked as a silk screener, assembler of playground equipment, telemarketer, and glassware packager. She testified that she suffers from depression; she cries frequently, sees demons, and hears voices that tell her to harm others. She testified that the psychotropic medications she takes help with her depression only sometimes, but she testified that she doesn't experience side effects from the medications. She testified that she drinks vodka twice a week. She testified that she had a car accident in 2005, and since has suffered from neck and back pain, sometimes with tingling in her arms. She testified that she lies down a lot to alleviate the pain. On days she feels depressed, she has difficulty getting out of bed. She testified that she can sit in a chair for half a day, but otherwise must change positions about every hour. She testified that she has difficulty lifting her one-year-old grandchild. She testified that she loads and unloads the dishwasher, and folds laundry. She

---

[6] A GAF of 61-70 indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. *Diagnostic and Statistical Manual*, Text Revision 34 (4th ed. 2000).

is able to go to the grocery store with her daughter, but she is forgetful about what she needs to buy. She testified that she leaves the house two or three times per week for church or family activities. She testified that she used to enjoy crafts, but no longer has the focus or patience. A vocational expert testified at the hearing that a person of the psychological limitations described by Houston would be unable to perform any work in the national economy. (Tr. 22-43).

*ALJ Opinion*

The ALJ rendered a decision denying benefits on March 25, 2011 (Tr. 8-19). The ALJ found that Houston suffered from the following severe impairments: hypertension; degenerative disc disease of the cervical, thoracic, and lumbar spine; history of fractured leg; bunions; hammertoe; alcohol abuse; major depressive disorder; and anxiety disorder. The ALJ found, however that none of the claimant's impairments meet or medically equal a listing. Regarding Houston's mental impairments, the ALJ found that the claimant has only mild restrictions in her activities of daily living, moderate difficulties in social functioning, moderate difficulties in concentration, persistence, or pace and had no episodes of decompensation of extended duration. The ALJ found, therefore, that Houston's mental impairments do not meet listing criteria. The ALJ found that Houston retained the Residual Functional Capacity (RFC) to stand for two hours at a time and a total of six hours in an eight-hour workday; sit for two hours at a time and a total of six hours in and eight-hour workday; to lift and carry 20 pounds occasionally and ten pounds frequently; occasionally bend, stoop, crouch, squat, kneel, and crawl; but should avoid working around heights and hazardous unprotected moving equipment. Regarding Houston's mental limitations, the ALJ found she should not have a high stress job, such as a job requiring sustained fast-paced activity or a job requiring strict and explicit production quotas, deadlines, schedules, and unusual changes in work settings; she is not able to sustain a high level of concentration such

as sustained precision or sustained attention to detail; she should not have a job requiring interaction with the public; but is capable of carrying out simple routine or simple repetitive tasks.

The ALJ found not credible the claimant's subjective complaints of pain and psychological symptoms. Regarding claimant's mental impairments, the ALJ noted that Houston has not required "aggressive medical treatment, recent hospital confinement, or psychiatric intervention due to her impairments." The ALJ also noted Houston's non-compliance with treatment, "which suggests that the symptoms may not have been as limiting as the claimant has alleged in connection with this application." The ALJ noted that "on numerous physical examinations, the claimant is noted to be negative for depression, mood swings, anxiety and admission to a hospital for psychiatric illness" (Tr. 14).

In determining Houston's mental RFC, the ALJ gave significant weight to the opinion of Dr. Anderson, the examining, non-treating physician because she was a specialist, because her opinion was consistent with other evidence in the record, and her opinion was internally consistent. The ALJ gave little weight to the opinion of Dr. Ellis, Houston's treating psychologist, because the ALJ found inconsistencies between the evidence in the record as a whole and Dr. Ellis's determination that Houston had numerous marked limitations in her mental functioning. The ALJ further found that Dr. Ellis's opinion was not supported by clinical findings, test results, or the conservative course of treatment Houston received. The ALJ also discounted Dr. Ellis's opinion because it was "based only on checkmark choices" as opposed to Dr. Anderson's opinion which was supported by a narrative. The ALJ gave "some weight" to the opinion of Dr. Bland, the non-examining psychologist, because his opinion "further supports the finding herein." Finally, the ALJ gave little weight to the GAF scores found in the record

because he determined they were created by Houston's "subjective complaints rather than from objective testing or reviewable measurements." The ALJ found, in reviewing the evidence in the record, that the routine and conservative treatment Houston received did not reflect a disabling condition. In addition, the ALJ noted that Houston's self-reported daily activities were inconsistent with "debilitating conditions." Accordingly, the ALJ found Houston not credible as a witness. The ALJ ultimately found Houston capable of past relevant work as a glass inspector/packer, in addition to other jobs existing in the national economy.

## LEGAL STANDARDS

To receive disability benefits, a claimant must be "disabled." A disabled person is one whose physical or mental impairments result from anatomical, physiological, or psychological abnormalities which can be demonstrated by medically acceptable clinical and laboratory diagnostic techniques and which prevent the person from performing previous work and any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A), 1382c(a)(3)(B), 1382c(a)(3)(D).

The Social Security regulations provide for a five-step sequential inquiry for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The Commissioner must consider in sequence: (1) whether the claimant is currently employed and doing substantial gainful activity, (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments, (3) whether the impairment meets or equals one listed by the Commissioner and whether it meets the duration requirement, (4) whether the claimant has the residual functional capacity to return to doing his or her past work, and (5) whether the claimant is capable of making an adjustment to some other type of work available in the national economy. *See Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003); *Goff v. Barnhart,* 421

F.3d 785, 790 (8th Cir. 2005). If the claimant does not have a listed impairment, but cannot perform his or her past work, then the burden shifts to the Commissioner at step five to show that the claimant can perform some other job that exists in the national economy. *Id.*

Judicial review of a denial of disability benefits is limited to whether there is substantial evidence on the record as a whole to support the Social Security Administration's decision. 42 U.S.C. § 405(g); *Minor v. Astrue*, 574 F.3d 625, 627 (8th Cir. 2009). Substantial evidence is "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. V. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence on the record as a whole," however, requires a more exacting analysis, which also takes into account "whatever in the record fairly detracts from its weight." *Minor*, 574 F.3d at 627 (quoting *Wilson v. Sullivan*, 886 F.2d 172, 175 (8th Cir. 1989)). Thus, where it is possible to draw two inconsistent conclusions from the evidence, and one conclusion represents the ALJ's findings, a court must affirm the decision. *See Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992) (citing *Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1989)). In other words, a court should not disturb an ALJ's denial of benefits if the decision "falls within the available zone of choice." *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). A decision may fall within the "zone of choice" even where the court "might have reached a different conclusion had [the court] been the initial finder of fact." *Id.* (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)).

*Medical Opinions*

Generally the opinion of a treating physician is given controlling weight so long as the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Prosch v. Apfel*, 201

F.3d 1010, 1012-13 (8th Cir. 2000) (quoting 20 C.F.R. § 404.1527(d)(2)). An ALJ may discount the opinion of a treating physician, however, when other medical opinions are better supported by medical evidence, or where a treating physician renders inconsistent opinions. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citing *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010)). Generally, the opinions of examining medical sources are given greater weight than the opinions of non-examining sources, and the opinions of specialists in a medical sub-field are given greater weight than those of non-specialists. Any medical opinion regarding disability may be discounted by the ALJ, however, because the determination whether an individual is disabled is left to the Commissioner. 20 C.F.R. § 404.1527(d)(1). In determining whether a claimant is disabled, an ALJ is directed to evaluate the opinion of a consulting physician based upon the evidence in the record and upon the source's area of specialty or expertise in the listings. 20 C.F.R. § 404.1527(e)(2)(ii). Regardless of the source of the opinion, the ALJ must explain and give good reasons for the weight accorded to the various opinions. *Id*. The Eighth Circuit has upheld an ALJ's decision to discount the opinion of a treating physician in cases where "other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Reed v. Barnhart*, 399 F.3d 917, 921 (8th Cir. 2005) (quoting *Prosch*, 201 F.3d at 1013).

## DISCUSSION

The record indicates that Houston sought psychological treatment regularly between 2008 and 2011. In December 2008, she was diagnosed with Major Depressive Disorder. In May 2009, Houston reported depression, anxiety, and "seeing demons." She was diagnosed with Major Depressive Disorder, Severe with Psychotic Features, and Mood Disorder, with a

GAF of 48, indicating serious symptoms and serious impairment in functioning. She expressed suicidal ideations. In November 2009, although taking Celexa, she reported to Dr. Ellis she had depression, anxiety, and was again "seeing demons." Dr. Ellis diagnosed Major Depressive Disorder, Severe with Psychotic Features, and a GAF of 50. Dr. Ellis administered the BDI and the BAI. On both, Houston scored in the "severe" range. Her score on the BHS was 19 out of 20. A score of higher than nine is predictive of eventual suicide in the following five to ten years. Although Houston attended sessions with Dr. Ellis from November 2009 through January 2010, she was discharged from treatment for failing to appear for appointments. She missed many appointments due to difficulty finding transportation. She again sought help from Dr. Ellis in November 2010 for depression, anxiety, and frequent drinking. She attended sessions with Dr. Ellis from November 2010 through January 2011. In March 2011, she was hospitalized after a suicide attempt. The record also shows that Houston has taken an antidepressant during this entire period.

Despite this significant history of psychological problems, the ALJ gave little weight to Dr. Ellis's opinion that Houston suffered from marked difficulties in the areas of understanding and memory, sustained concentration and persistence, and social interaction. While an ALJ is free to discount the opinion of a treating physician, he must give good reasons for doing so. The Court finds inadequate the ALJ's explanation that Dr. Ellis's opinion was not based on any clinical findings, test results, measurements in her treatment notes, or the conservative course of treatment.

Substantial evidence in the record supports a finding that Houston is markedly limited by her psychological symptoms, which could presumptively demonstrate a disability under

Listing 12.04. The ALJ credited Dr. Anderson's opinion because it contained a narrative explaining her conclusions, and was supported by the notes from a single examination of Houston. On the other hand, the ALJ discredited Dr. Ellis's opinion because it was based "only on checkmark choices." The Court finds error in this conclusion. Although the completed MSS by Dr. Ellis contains only checked boxes and no cohesive narrative, the opinions expressed therein are supported by seven therapy session, upon which Dr. Ellis made extensive notes (Tr. 433-58). The Court notes that the Eighth Circuit has "never upheld a decision to discount an MSS on the basis that the 'evaluation by box category' is deficient *ipso facto*." *Reed*, 399 F.3d at 921. Furthermore, the MSS was completed after administration of the BDI, BAI, and BHS, all of which revealed Houston was suffering from severe symptoms. That these test results appear in the record undermines the ALJ's assertion that Dr. Ellis's opinion was not based upon objective testing.

Moreover, after the December 21, 2009, MSS, Dr. Ellis continued to treat Houston intermittently for the next two years, consistently reporting serious psychological symptoms. In all, the record contains over 50 pages of Dr. Ellis's treatment notes, many of which contain a narrative of Houston's family history, psychological history, activities of daily living, and current mental status.

Based upon a thorough review of the record, the Court finds the ALJ determination to discount the opinion of the treating psychologist Dr. Ellis was not based upon substantial evidence on the record as a whole. Therefore, it was error for the ALJ to credit the opinion of Dr. Anderson, the non-treating psychologist, that Houston suffered from only mild psychological limitations, over the opinion of Dr. Ellis, that Houston suffered from marked,

13
Case 6:11-cv-03500-DPR   Document 16   Filed 03/25/13   Page 13 of 15

and possibly presumptively disabling, limitations.[7]

Regarding the ALJ's decision to order a consulting psychological examination after the hearing, the Court does not find reversible error on this question as an ALJ is authorized to order consultative examinations "to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [him or her] to make a determination or decision." 20 C.F.R. § 404.1519a. The Court notes, however, that because the record contains Dr. Ellis's treatment notes for two years after her MSS, it would not have been improper for the ALJ to have ordered Dr. Ellis to complete an updated MSS in 2011. The ALJ may be well-served to request an updated MSS from Dr. Ellis.

## CONCLUSION

Based upon a thorough review of the record, the Court finds the ALJ's decision to discredit the opinion of Houston's treating physician is not supported by substantial evidence on the record as a whole. Accordingly, the decision of the Commissioner of Social Security should be reversed.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner of Social Security is **REVERSED AND REMANDED** for re-evaluation of the opinions of the treating, examining, and non-treating psychologists, and redetermination of Houston's RFC.

**IT IS SO ORDERED.**

**DATED:** March 25, 2013

                                              /s/ *David P. Rush*
                                           **DAVID P. RUSH**

---

[7] Based upon the Court's order to reconsider the medical opinions, the ALJ should also reconsider the credibility of Houston's subjective complaints of psychological symptoms in the process of reweighing the medical opinions and re-evaluating the RFC.

**United States Magistrate Judge**